## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o United States Attorney's Office<br>Judiciary Center Building<br>555 4th Street, N.W.<br>Washington, D.C. 20530<br><br>           Plaintiff,<br><br>      v.<br><br>TWENTY-ONE THOUSAND<br>NINE HUNDRED FORTY DOLLARS<br>($21,940.00) IN UNITED STATES<br>CURRENCY,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully pleads as follows:

1.  This is a civil action, *in rem*, brought to enforce 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any real or personal property that is involved in a money laundering offense in violation of 18 U.S.C. § 1956 or any property traceable to such property.  This action is also brought to enforce 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of any real or personal property that constitutes or is derived from proceeds traceable to, among other offenses, any offense that is a "specified unlawful activity" of the federal anti-money laundering statutes.

2.  This Court has jurisdiction over this matter by virtue of  28 U.S.C. §§ 1345 and 1355(a).  Venue is established by virtue of 28 U.S.C. §§ 1355(b) and 1395.

3.  The defendant property is more fully described as:

> twenty-one thousand nine hundred forty dollars ($21,940.00) in
> United States currency seized from the residence of 266 Harry S.
> Truman Drive, Largo, Maryland on July 29, 2005.

4.  The defendant property is subject to forfeiture because, as set forth below,

it is property involved in money laundering and/or constitutes proceeds or is derived from

proceeds traceable to offenses constituting specified unlawful activities, including wire fraud and

mail fraud.

**Duane McKinney's Unlawful Activities**

5.  On June 10, 2005, Duane McKinney was arrested in Virginia after a police officer

stopped to investigate why his vehicle was pulled to the side of a busy road and learned that an

outstanding warrant existed for Mr. McKinney.  Mr. McKinney's vehicle, a 2002 BMW 745 LI

sedan, was taken into custody and an inventory search conducted revealed $159,040.00 in a

duffel bag in the trunk of the car.  Mr. McKinney told officers that the money belonged to the

Brotherhood of Men, Inc., and that he had withdrawn the money in increments from different

banks at various times during the past year.

6.  Mr. McKinney told officers that he purchased the BMW from Best Auto Sales in

Arlington, Virginia for the amount of $47,195.00.  Mr. McKinney paid for the vehicle with cash

and two cashier's checks.  The vehicle was purchased with funds withdrawn from the Bank of

America account no. xxxxxxxx7468, held in the name of the Brotherhood of Men, Inc., and into

which the proceeds of Mr. McKinney's fraud scheme, described herein, were deposited.  Mr.

McKinney is the sole signatory on this bank account.  On May 31, 2005, Mr. McKinney

2

withdrew $40,850.00 from Bank of America account no. xxxxxxxx7468.  On June 1 and 2, 2005, Mr. McKinney purchased cashier's checks from Bank of America in the amounts of $19,000.00 and $20,000, respectively.  The cashier's checks and cash were used to purchase the 2002 BMW.

7.  A check with employment services in Maryland, the District of Columbia, and Virginia revealed that no wage earnings or unemployment compensation records exist for Mr. McKinney during the past two years.  Mr. McKinney told officers that he received a non-taxable "stipend" (not a salary) from the Brotherhood of Men, Inc.

8.  Further investigation by federal agents revealed that Mr. McKinney was the subject of several lawsuits pending in the District of Columbia.  The facts underlying the lawsuits revealed that Mr. McKinney, acting through the Brotherhood of Men, Inc., created a scheme whereby he sold real properties that neither he, nor the Brotherhood of Men, Inc., legally owned.  Mr. McKinney used forged or fraudulent deeds as part of his scheme by which he appeared to transfer title to real properties in the District of Columbia to others in exchange for the payment of funds.  Mr. McKinney caused these funds to be deposited into and then withdrawn from bank accounts in the name of the Brotherhood of Men, Inc.  In many instances, Mr. McKinney caused the deeds for these District of Columbia real properties to be mailed from the D.C. Recorder of Deeds to his address of 266 Harry S. Truman Drive, Largo, Maryland.

## HANNA PLACE PROPERTY

9.  On February 16, 2005, a deed was recorded at the D.C. Recorder of Deeds that purports to transfer a parcel of real property located at 5021 Hanna Place, N.E., Washington, D.C. ("Hanna Place property"), from John A. Harrington and Leona M. Harrington to the Brotherhood of Men, Inc.  Joseph D. Liles, Sr., notarized the deed on February 16, 2005.  John

3

A. Harrington and Leona M. Harrington appear to have signed the deed on February 10, 2005, transferring the property to the Brotherhood of Men, Inc. On February 10, 2005, the date that they, supposedly, executed the deed transferring their interest in the Hanna Place property to the Brotherhood of Men, Inc., John A. Harrington and Leona M. Harrington were dead.

10. On April 23, 2005, the Brotherhood of Men, Inc., transferred its interest in the Hanna Place property to Chen Ping for $20,000.00.

11. Bank records for the Brotherhood of Men, Inc.'s Bank of America account no. xxxxxxxx7468 show that a $20,000.00 deposit was made into that account on April 25, 2005.

## EDSON PLACE PROPERTY

12. On July 21, 2004, a deed was recorded at the D.C. Recorder of Deeds that purports to transfer a parcel of real property located at 4265 Edson Place, N.E., Washington, D.C. ("Edson Place property"), from Carson Ruffner to the Brotherhood of Men, Inc. Joseph D. Liles, Sr., notarized the deed on July 22, 2003. Carson Ruffner appears to have signed the deed on July 21, 2004, transferring the Edson Place property to the Brotherhood of Men, Inc.

13. On August 12, 2004, the Brotherhood of Men, Inc., transferred its interest in the Edson Place property to Qiyao Yuan and Vivian Kwok for $40,000.00.

14. Bank records for the Brotherhood of Men's Bank of America account no. xxxxxxxx7468 show that a $40,000.00 deposit was made into that account on August 13, 2005.

15. Carson Ruffner, the true owner of the Edson Place property, told federal agents that he has never heard of the Brotherhood of Men, Inc., and that he never authorized the transfer of his interest in the Edson Place property to any person or entity.

4

## THIRD STREET PROPERTY

16. On July 6, 2004, a deed was recorded at the D.C. Recorder of Deeds that purports to transfer a parcel of real property located at 1927 Third St., N.E., Washington, D.C. ("Third Street property"), from Ronald Washington to the Brotherhood of Men, Inc. Joseph D. Liles, Sr., notarized the deed on July 6, 2004. Ronald Washington appears to have signed the deed on July 6, 2004, transferring the Third Street property to the Brotherhood of Men, Inc.

17. In June 2005, after Mr. McKinney's arrest, the 2002 BMW he was driving was seized and an inventory search of the vehicle was conducted. During the inventory search of the vehicle, officers recovered notices, addressed to Ronald Washington, from various District of Columbia agencies regarding delinquent utility bills for the Third Street property. Additionally, officers recovered from the 2002 BMW: (a) copies of Bank of America cashier's checks which had been used to pay the real property tax bills for the Third Street property; and (b) a photograph of the Third Street property.

18. On June 16, 2005, the Brotherhood of Men, Inc., transferred its interest in the Third Street property to an entity named 1612 Seventh Street, L.P., for $350,000.00.

19. On June 16, 2005, the net proceeds of that sale, $295,328.38, were transferred by wire from the Maryland bank account of the Cosmopolitan Real Estate Settlement Company, Inc., into the Brotherhood of Men, Inc.'s Bank of America account no. xxxxxxxx7468 in Washington, D.C.

20. Ronald Washington died on February 11, 1997, and, therefore, could not have executed the deed on July 6, 2004, transferring ownership interest in the Third Street property to the Brotherhood of Men, Inc.

5

## BASES FOR SEIZURE AND FORFEITURE

21.  On July 29, 2005, agents of the Federal Bureau of Investigation and other law enforcement officers ("agents") executed a federal search warrant on a residence at 266 Harry S. Truman Drive, Largo, Maryland 20774.  Mr. Duane McKinney lists the above address as his personal address and the business address for the Brotherhood of Men, Inc.  This is the same address to which Mr. McKinney had deeds on the above-described real properties mailed to him from the D.C. Recorder of Deeds.

22.  Mr. and Mrs. Hammond, the owners of the premises, were present during the execution of the search warrant at 266 Harry S. Truman Drive, Largo, MD.  Ms. Hammond is the sister of Duane McKinney.

23.  During the execution of the search warrant, agents recovered the defendant twenty-one thousand nine hundred forty dollars ($21,940.00) in U.S. currency.  The defendant currency was bound in Bank of America money wrappers in a safe located in the upstairs of the residence. These Bank of America wrappers were date-stamped and showed the Bank of America branch and teller's name on the wrappers.  Agents traced the wrappers to the Bank of America branch from which Mr. McKinney had withdrawn funds from the account in the name of the Brotherhood of Men, Inc., on dates close in time to the dates which appeared on the money wrappers.

24.  Among other things recovered by agents during the execution of the search warrant were: (1) Bank of America bank statements and receipts in the name of Brotherhood of Men, Inc.; (2) U.S. mail addressed to Duane McKinney; (3) a wallet containing a social security card in the name of Duane McKinney; (4) business cards in the names of Brotherhood of Men, Inc., and

McKinney Construction Company; and (5) two MasterCards in the name of Duane McKinney.

25.  Ms. Hammond operates a day care service on the premises of 266 Harry S. Truman Drive.  She told agents that she earns approximately $700.00 to $800.00 per week providing child care services.  Mr. Hammond claims a yearly salary of $66,000.00.

26.  Mr. and Mrs. Hammond told agents that the seized currency from the safe belonged to them and not to Duane McKinney.  They stated that their personal and business bank accounts were at Money One Federal Credit Union in Largo and M&T Bank.  The Hammonds admitted that they did not have an account at Bank of America.  Mr. Hammond told agents that he found the Bank of America wrappers on his kitchen table.  On March 22, 2006, Duane McKinney filed a complaint against the United States and the Federal Bureau of Investigation in the United States District Court for the District of Maryland (Civil Action No. 06-742).  In that complaint, Mr. McKinney alleges that the defendant $21,940.00 belongs to him and/or the Brotherhood of Men, Inc.  He seeks return of these seized funds along with interest thereon.

27.  Mr. Hammond told agents that he was going to buy a truck with $16,000.00 of the defendant currency.  Later, Mr. Hammond admitted to law enforcement agents that he had purchased a truck the day before.

28.  Ms. Hammond told agents that her brother, Duane McKinney, received his personal mail and his business mail for the Brotherhood of Men, Inc., at their address (266 Harry S. Truman Drive), but that Duane McKinney did not live at the residence.  The Hammonds further stated that they do not know where Duane McKinney lives, nor do they have a cell phone number or an emergency contact number for Duane McKinney.

29.  There is reasonable cause to believe that the defendant currency is personal property that is involved in money laundering offenses and/or constitutes or is derived from proceeds traceable to specified unlawful activities, including wire fraud and mail fraud.

## COUNT I

30.  All statements and averments made in paragraphs 1-28 are re-alleged and incorporated, herein, by reference.

31.  The defendant currency is subject to forfeiture because it was involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership, or control of the proceeds of wire fraud (18 U.S.C. § 1343), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

32.  As such, the defendant currency is property involved in a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## COUNT II

33.  All statements and averments made in paragraphs 1-28 are re-alleged and incorporated, herein, by reference.

34.  The defendant currency is subject to forfeiture because it was involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership or control of the proceeds of mail fraud (18 U.S.C. § 1341), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

35.  As such, the defendant currency is property involved in a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**COUNT III**

36.  All statements and averments made in paragraphs 1-28 are re-alleged and incorporated, herein, by reference.

37.  The defendant currency is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud), a specified unlawful activity.

38.  As such, the defendant currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**COUNT IV**

39.  All statements and averments made in paragraphs 1-28 are re-alleged and incorporated, herein, by reference.

40.  The defendant currency is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341 (mail fraud), a specified unlawful activity.

41.  As such, the defendant currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States of America prays that process of warrant issue for the arrest of the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court

may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar No. 451058


_____/s/_____
WILLIAM R. COWDEN
Assistant United States Attorney
D.C. Bar No. 426301


_____/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
United States Attorney's Office
Asset Forfeiture Unit, Criminal Division
555 4th St., NW, Room 4818
Washington, D.C.  20530
(202) 514-7250

## <u>VERIFICATION</u>

I, Kelly Bender, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture *in rem* is based upon reports and information known to me and/or furnished to me by law enforcement agents and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on this 23rd day of June 2006.


_____/s/_____

Kelly Bender
Special Agent
Federal Bureau of Investigation

11