# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Civil No. 06-1146 (RBW)** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **$21,940 IN U.S. CURRENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MOTION TO STRIKE ANSWER AND FOR ENTRY OF A DEFAULT JUDGMENT AND JUDGMENT OF FORFEITURE AGAINST THE *IN REM* DEFENDANT CURRENCY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves, pursuant to Article III of the United States Constitution, Rule C(6), Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, and 18 U.S.C. §§ 983(a)(4)(A) and (d)(6)(B), to strike the Answer filed by Duane McKinney ("McKinney"). McKinney lacks both "statutory standing" and Article III standing to contest the forfeiture of the defendant currency because: 1) he failed to file a verified statement of interest or claim; and 2) he admitted that the defendant currency belonged to someone else. Thus, he is, at best, an unsecured creditor of another who has elected not to challenge this forfeiture case.

Therefore, the United States moves pursuant to Fed. R. Civ. P. 55 for entry of a Default Judgment and for a Judgment of Forfeiture as to the defendant twenty-one thousand nine hundred forty dollars ($21,940.00) in United States currency. As discussed in the accompanying memorandum of points and authorities, no other party has filed a timely verified statement of interest or claim and answer challenging the forfeiture of the defendant funds and the time for

filing a claim has expired.  Thus, the United States is entitled to default judgment.  <u>See</u> 18 U.S.C.

§ 983(a)(4)(A) and Supplemental Rules C(6) and Fed. R. Civ. P. 55.

A proposed Order and Judgment of Forfeiture for the *in rem* defendant currency are

submitted herewith, along with a Memorandum of Points and Authorities.

Respectfully submitted,

_/s/_____
JEFFERY A. TAYLOR, D.C. Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney

_/s/_____
DIANE G. LUCAS, D.C. Bar #443610
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7912

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion to Strike Answer and for
Entry of a Default Judgment and Judgment of Forfeiture against the *In Rem* Defendant Currency,
accompanying Memorandum, and Proposed Order and Judgment of Forfeiture was sent by U.S.
Postal Service, certified mail, to Mr. Duane McKinney, *Pro se,* 1610 R Street S.E.,
#3,Washington, DC 20020 and 1035 10th Street, N.E., Washington, D.C. 20002 and to his
criminal defense attorney, Bruce A. Johnson, Jr., Esquire, 4301 Northview Drive, Bowie, M.D.
20716 on this __ day of September, 2007.

/s/_____
DIANE G. LUCAS
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Civil No. 06-1146 (RBW)** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **$21,940 IN U.S. CURRENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE ANSWER**
**AND FOR ENTRY OF DEFAULT JUDGMENT AND JUDGMENT**
**OF FORFEITURE AGAINST THE *IN REM* DEFENDANT CURRENCY**

The United States moves to strike the Answer of Duane McKinney ("McKinney") on the

ground that he lacks both "statutory" and constitutional standing to contest the forfeiture of the

defendant currency.  A claimant in a forfeiture action must have both "statutory standing" and

Article III standing (case-or-controversy).  See United States v. $487,825.00, 484 F.3d 662, 664

(3d Cir. 2007).  Here, McKinney has neither.

First, McKinney lacks "statutory standing."  To obtain that standing, McKinney had to

meet all of the procedural requirements set forth in Rule C(6) Supplemental Rules for Certain

Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rules") and 18 U.S.C. §

983(a)(4)(A), including filing a verified statement of interest or claim to the defendant currency.

McKinney never did so, and thus, lacks "statutory standing" to contest the forfeiture.[1]

---

[1] All references in this case are to Supplemental Rule C, rather then the new procedural
rule governing civil forfeiture, Supplemental Rule G, because Supplemental Rule G did not go
into effect until December 2006 after this case was filed.  Note that filing a timely verified claim
is also procedural requirement under Supplemental Rule G.  See Supplemental Rule G(5)(a).
Therefore, case law discussing the procedural requirements of Supplemental Rule C remains
instructive when analyzing cases brought under Supplemental Rule G.

To demonstrate constitutional standing McKinney has to show that he possesses the necessary interest in the defendant currency to make this action a "case or controversy."  In documents filed in a civil case in the District Court for the Southern District of Maryland, McKinney admitted that the defendant currency did not belong to him when seized.  Instead, McKinney stated he only now has an interest in the currency because he "bought" that interest in the defendant currency.  He alleges he did so when he reimbursed his sister and brother-in-law for their alleged loss of the defendant currency after it was seized by law enforcement.  But, McKinney's alleged payment to his relatives does not give him the necessary interest in the particular funds seized to establish constitutional standing.  Instead, at best, he became an unsecured creditor of his sister and brother-in-law.  Unsecured creditors of a debtor lack Article III standing to contest the civil forfeiture of a particular defendant property.  See United States v. $20,193.39, 16 F.3d 344, 346 (9th Cir. 1994); see also 18 U.S.C. § 983(d)(6)(B) (the Civil Asset Forfeiture Reform Act ("CAFRA") specifically excludes unsecured creditors as having an ownership interests in specific property sued for forfeiture).

No other party has filed a timely verified statement of interest or claim and answer challenging the forfeiture of the defendant funds and the time for filing a claim has expired.  Therefore, the United States is entitled to default judgment.  See 18 U.S.C. § 983(a)(4)(A) and Supplemental Rules C(6).

Pursuant to Federal Rules of Civil Procedure 55, plaintiff, the United States of America, hereby files this memorandum in support of its motion to strike the answer and for default judgment on the Complaint for Forfeiture *In Rem* of the defendant currency.  For the reasons set forth below, the United States' motion should be granted.

4

## BACKGROUND

On July 29, 2005, as part of an on-going investigation into alleged criminal activities involving McKinney and The Brotherhood of Men, Inc., law enforcement agents conducted a search of the premises at 266 Harry S. Truman Drive, Largo, Maryland, pursuant to a valid federal search warrant.[2]  See Document No. 1 at ¶s 21 and 23.[3]  See also Exhibit A, Civil Action No. 06-742, Document No. 11 at 1.  From a safe, agents recovered the defendant $21,940.00 in U.S. currency wrapped in Bank of America wrappers.  Id.  Hope and Anthony Hammond (McKinney's sister and brother-in-law) are the owners of 266 Harry S. Truman Drive.  See Document No. 1 at ¶ 22 and Exhibit A at 1.  At the time of the search, the Hammonds told law enforcement agents that they were the owners of the defendant currency.[4]  See Document No. 1 at ¶s 26 and 27.   Mrs. Hammond told agents that her brother, McKinney, received his personal mail and business mail for the Brotherhood of Men, Inc. at their address, 266 Harry S. Truman Drive.  See Document 1 at ¶s 21 and 28.  According to both Hope Hammond and Anthony Hammond, McKinney did not live at that address.  See Document ¶s 1 at 28  and Exhibit A at 1.

McKinney filed a lawsuit in the U.S. District Court for the District of Maryland, Civil

---

[2]  The address has been designated as being a part of Upper Marlboro and/or Largo.

[3]  "Document No." refers to the docket number assigned to the electronically-filed documents in the instant matter.

[4]  In its Complaint, the United States asserts that the defendant currency was never owned by McKinney's relatives, but was proceeds of McKinney's criminal activities.  See Document No. 1.  Unlike his relatives, McKinney banked at the Bank of America.  The instant motion, however, is based upon McKinney's assertion that he obtained an interest in the defendant property when he "reimbursed" his relatives for their alleged loss of the defendant currency after it was seized.

Action No. 06-742, requesting the return of the defendant currency.  See Exhibit B.[5]  In his

initial pleading in that matter, McKinney sought the return of the seized currency in his capacity

as President of The Brotherhood of Men, Inc., and wrote that The Brotherhood of Men, Inc., was

the owner of the defendant currency.  See Exhibit C ¶s 1 and 3.[6]  In later documents filed in Civil

Action No. 06-742, both McKinney and his relatives alleged that McKinney reimbursed them for

their alleged loss of the defendant currency when it was seized by the United States.  See

Exhibits A and D.[7]  Specifically, McKinney asserted that, "[f]inally, $21,940.00 was returned to

the Hammond Family."  See Exhibit A at 3.  Likewise, the Hammonds asserted, ". . .  the money

that was taken from our property at 266 Harry S Truman Dr, Upper Marlboro, MD in the amount

of $21,940.00 in July 2005 was reimbursed to Hope Mckinney-Hammond and Anthony

Hammond by Duane Mckinney."  See Exhibit D.

On June 23, 2006, the United States filed the instant forfeiture action against the

defendant currency in Civil Action No. 06-1146 and the Court issued a Warrant for Arrest *in rem*

and notice for the defendant currency.  See Documents No. 1 and 3.  The United States

attempted to serve all of the interested parties by certified mail to the searched premises,

including McKinney and the Hammonds, but the papers were returned to the United States

Attorney's Office as "unclaimed."  See Exhibit E.  Notice of the seizure was published in THE

WASHINGTON TIMES on August 21, 2006, and in THE DAILY WASHINGTON LAW REPORTER on

August 29, 2006.  Those notices stated, in pertinent part, that,

---

[5] Exhibit B is the docket history for Civil Action No. 06-742 in the U.S. District Court
for the District of Maryland.

[6] Civil Action No. 06-742, Document No. 1, Complaint.

[7] Civil Action No. 06-742, Document No. 11-2.

> Any person who is entitled to possession, or claiming an interest in or to said property, pursuant to Rule C(6) of the Supplemental Rules of certain Admiralty and Maritime Claims and within 30 days after the earlier of (1) receiving actual notice of execution of process, or (2) the publication of this notice, must file a verified claim with the Clerk of the Court, U.S. District Court for the District of Columbia and make service upon the attorney for the plaintiff and must serve their answers within 20 days after the filing of their verified claims.

See Exhibit F.  As a result of the publications, any verified claim should have been filed with the Clerk of the Court by September 28, 2006.[8]  McKinney also received copies of the Complaint, Arrest Warrant and Notice when he signed for them, along with other documents on September 25, 2006.[9]  See Exhibit G.

On October 11, 2006, McKinney filed a document purporting to be a Verified Answer, asserting that he was the lawful owner of the defendant currency.  But, the answer was not sworn to.  See Exhibit H.[10]  Moreover, McKinney never filed a verified claim to the defendant currency before filing an answer as is required by the applicable rules.

## ARGUMENT

### McKinney Lacks Standing to Contest the Forfeiture of Defendant Currency

Civil forfeiture is an *in rem* proceeding against the property.  See United States v. All Funds in Accounts (Banco Espanol de Credito), 295 F.3d 23, 25 (D.C. Cir. 2002) ("Civil forfeiture actions are brought against property, not people.  The owner of the property may

---

[8]  There can be no doubt that as of August 1, 2006, McKinney had actual notice of the Complaint because it was discussed in the government's reply brief to a Motion to Dismiss in Civil Action No. 06-742, which he did receive.  See Exhibit I.

[9]  The United States also filed a lawsuit to forfeit $159,040 in U.S. currency and a BMW seized from a car driven by McKinney in Civil Action No. 05-2404 and documents from that lawsuit were also contained in the packet that McKinney signed for.

[10]  For reasons not apparent to the United States, this document was not entered into the Electronic Filing System and therefore does not have a document number in the instant matter.

intervene to protect his interest"); United States v. One-Sixth Share, 326 F.3d 36, 40 (1st Cir. 2003) ("Because civil forfeiture is an *in rem* proceeding, the property subject to forfeiture is the defendant. Thus defenses against the forfeiture can be brought only by third parties, who must intervene"). Not everyone can intervene and defend a forfeiture action. In order to defend a civil forfeiture action, the intervenor has the burden of proving his interest in the defendant property.

In a civil forfeiture case, a putative intervenor must establish that he or she has both "statutory standing" and Article III (case-or-controversy) standing. See United States. v. $487,825.00, 484 F. 3d 662, 664 (3d Cir. 2007). "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution." Castella, Steffan D., *Asset Forfeiture in the United States: A Treatise on Forfeiture Law*, § 9-4, at 22-23 (2006).

McKinney, who needs both "statutory" standing and Article III standing to contest the forfeiture of the defendant currency, has neither. McKinney's failure to file any verified statement of interest or claim precludes him from having "statutory" standing. Even if he had made a timely verified claim, however, he still lacks Article III standing because he admitted he did not have an interest in the defendant currency when was it was seized by law enforcement and he cannot later "buy" his way into this forfeiture case.

A.     **McKinney Failed to Comply with the Statutory Prerequisites Governing One's Right to Appear on Behalf of a Defendant in a Civil Forfeiture Case.**

"In order to have statutory standing, the claimant must show he has met the procedural pleading requirements of [18 U.S.C. ] § 983(a)(4) and Rule G(5), including, filing a timely verified claim and answer . . . "  Casella, Steffan D., *Asset Forfeiture in the United States: A Treatise on Forfeiture Law*, § 9-4, at 25 (2006).  A verified statement of interest or claim requires, "[a]ny party who wishes to defend a forfeiture action [will] be forced to swear to his interest in the forfeited property."  United States v. Beechcraft Queen Airplane, 789 F.2d 627, 630 (8th Cir.1986) (citations omitted); see also United States v. Commodity Account No. 54954930 at Saul Stone & Co., 219 F.3d 595, 597-598 (7th Cir. 2000) ("[v]erification forces the claimant to place himself at risk of perjury for false claims" and failure to verify the claim results in dismissal for lack of statutory standing).

Rule C(6) and now Rule G(5) seek to eliminate wasting judicial resources by allowing only those individuals who truly have an interest in a defendant property, and are willing to swear to that interest, to intervene and contest a forfeiture.  In this case, regarding the defendant currency, McKinney never filed a verified claim or statement of interest.  Thus, he has no "statutory standing" to intervene.  Moreover, McKinney's conflicting statements to this Court and the U.S. District Court for the District of Maryland- -that the defendant currency was owned by The Brotherhood of Men, Inc., his relatives, and lastly by himself- -is the type of gamesmanship the procedural rules were designed to prevent, by forcing an individual to swear to his or her interest at the outset of every case.

The filing of a timely verified claim under Supplemental Rule (C)6 and 18 U.S.C. § 983 (a)(4)(A) is a jurisdictional prerequisite to a claimant's ability to contest a federal *in rem*

forfeiture action.  See United States v. $2,857.00, 754 F.2d 208, 213 (7th Cir. 1985).  The

procedural rules are clear, "[a] verified claim in a forfeiture *in rem* action must be filed by the

claimant in order for the claimant to acquire 'statutory standing.'  Therefore, a claimant wishing

to defend all or part of a defendant currency in a civil forfeiture case must satisfy Supplemental

Rule C(6)'s verified claim requirement."  United States v. One 1990 Mercedes Benz, 926 F.

Supp. 1, 3 (D.D.C. 1996) (citations omitted).  In order for a claimant to have standing,

"[g]enerally, strict compliance with the time periods of CAFRA and Rule C(6) is required."

United States v. $41,437.00 U.S. Currency, 242 F. Supp.2d 193, 195 (W.D.N.Y. 2002), citing,

United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993).  The filing of a verified claim is a

prerequisite to the filing of an answer, and confers standing on a claimant to contest a forfeiture.

United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir.1990).  "If a putative claimant fails

to file a verified claim or otherwise follow the provisions set forth in Supplemental Rule C(6), it

is within the court's discretion to strike the deficient claim."  United States v. Funds from

Prudential Securities et al., 300 F. Supp. 2d 99, 103 (D.D.C. 2004) (citing United States v. One

1990 Mercedes Benz 300 CE, 926 F. Supp. 1, 4 (D.D.C. 1996).[11]  The failure to file a timely

claim, standing alone, is sufficient to disqualify a potential claimant.  United States v. One-Sixth

---

[11]  Courts have sometimes excused less than strict compliance for good cause shown.  See
United States v. Real Property Located at Incline Village, et al., 976 F. Supp. 1321, 1325 (D.
Nev., 1997) (citing, United States v. Borromeo, 945 F.2d 750 (4th Cir. 1991)); see also United
States v. One 1978 Piper Navajo Aircraft,  748 F.2d 316, 318 (5th Cir. 1984); United States v.
$83,686.00, 2007 WL 2238824 (D.D.C. July 9, 2007).  Regardless, McKinney cannot show good
cause or "excusable neglect" for failing to file a timely verified claim.  Moreover, McKinney has
not even requested an extension of time to file the required pleadings.  Allowance of a late
pleading at this juncture would contradict the purpose for the strict time requirements of the
Supplemental Rules, including the ascertainment of the interests of all third parties and any
defenses asserted.  McKinney should not be afforded an additional opportunity to change his
story regarding the ownership of the defendant currency.

Share of James J. Bulger in [Lottery Proceeds], 326 F.3d 36, 41-42 (1st Cir. 2003).

Supplemental Rule C(6) requires that a claimant file a verified statement of interest or claim with the Clerk of the Court within 30 days of either service of the complaint or, if not served, with 30 days from the completed publication of notice and then an answer within 20 days after filing the claim. Supplemental Rule C(6)(a) provides:

> In an *in rem* forfeiture action for violation of a federal statute:
>
>> (i) a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right:
>>
>>> (A) within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4), or
>>>
>>> (B) within the time that the court allows.
>>
>> .  .  .  .
>>
>> (iii) a person who files a statement of interest in or right against the property must serve and file an answer within 20 days after filing the statement.

18 U.S.C. § 983(a)(4)(A), which is part of the Civil Asset Forfeiture Reform Act ("CAFRA"), references the Supplemental Rules and similarly requires that a claimant file a claim no later than 30 days after service or publication and an answer within 20 days after filing the statement of interest.

McKinney did not file any verified claim or statement of interest with this Court, much less a timely one, and failed to comply with the requirements of Rule C(6)(a)(i)(A) despite notice of the forfeiture action. This failure is fatal to any effort of his to contest the forfeiture because he lacks "statutory standing." The government complied with its statutory notice obligations by executing process against the defendant currency, sending notice by certified mail to all persons

known to have a potential interest therein, and publishing notice.  <u>United States v. Real Property Located at Incline Village</u>, 976 F. Supp. 1321, 1325 (D.Nev. 1997).  <u>See</u> Background section <u>infra</u> at p. 6-7.  No verified statement of interest or claim was ever filed with the Court.  Instead, on October 11, 2006, McKinney filed a document purporting to be a verified answer to the complaint, although there is no verification in the pleading.  <u>See</u> Exhibit H.  McKinney's failure to meet the "statutory standing" requirements set forth in Supplemental Rule C(6) and 18 U.S.C. § 983(a)(1)(A) precludes him from contesting the forfeiture action and his answer should be stricken.

       **B.**     **<u>General Unsecured Creditors Lack Standing Under Article III To Contest Civil Forfeiture Actions</u>**.

Assuming *arguendo* that McKinney met his burden of proving "statutory standing," he still cannot establish that he has Article III standing to contest the forfeiture of the defendant currency.  In every civil forfeiture case, a claimant must show that he has standing to contest the forfeiture under Article III of the U.S. Constitution.  Whether a claimant or any other litigant has standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).

To establish standing in a forfeiture case, a claimant bears the burden to demonstrate a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." <u>United States v. $81,000.00</u>, 189 F.3d 28, 35 (1st Cir. 1999); <u>see</u> <u>also</u> <u>Tarsney v. O'Keefe</u>, 225 F.3d 929, 934 (8th Cir. 2000); <u>United States v. 1998 BMW "I" Convertable</u>, 235 F.3d 397, 399 (8th Cir. 2000); <u>United States v. Contents of Accounts (Friko Corporation)</u>, 971 F.2d 974, 985 (3d Cir. 1992).  "A claimant is generally able to establish Article III standing by showing that he or she has a colorable ownership, possessory, or secured interest in the

defendant property." Casella, Steffen D., *Asset Forfeiture in the United States: A Treatise on Forfeiture Law*, § 9-4, at 25 (2006). A claimant does not have to establish ownership to have standing; however, ownership is one way of establishing standing. Id., at § 10-2. But if, a claimant asserts an ownership interest as the basis for his standing to contest the forfeiture, "he must fall within the definition of 'owner' in § 983(d)(6)." Id., at 10-3.

McKinney's Answer asserts that he is the owner of the defendant currency.[12] See Exhibit H. Because McKinney admitted he bought his interest in the defendant currency from his relatives after it had already been seized, his interest is no greater than that of an unsecured creditor and he lacks constitutional Article III standing in this matter. An unsecured creditor does not fall within the definition of "owner" under 18 U.S.C. § 983(d)(6), because the statute specifically excludes unsecured creditors from that definition.

> (6) In this subsection, the term "owner"--
> . . .
>  (B) does not include–
>
>> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
>
> . . .

---

[12] McKinney's ownership assertion conflicts with statements he made to the U.S. District Court for the District of Maryland–namely that the defendant currency was owned by The Brotherhood of Men and, later, owned by his relatives. The time-line in this case is enlightening. In July 2005, the defendant currency was seized as part of a criminal investigation as evidence of fraud and money laundering activities. See Document No. 1. In March, 2006, McKinney filed suit in Maryland to gain the defendant currency, but at the same time tried to distance himself from the money by claiming the defendant currency was owned by The Brotherhood of Men, Inc. See Exhibit C. In April, 2006, this Court ruled in another forfeiture action, that McKinney could not appear on behalf of The Brotherhood of Men, Inc., in federal court. See Court Order, Document No. 6, Civil Action 05-2404. Thereafter, in June, 2006, McKinney alleged, in the Maryland case, that his relatives were the owners of the defendant currency. See Exhibit D. In October 2006, McKinney filed an answer in this case where, without elaboration, he purports to be the individual owner of the defendant currency. See Exhibit H.

18 U.S.C. §983(d)(6)(B)(i).  Moreover, the statute is consistent with the case law which has long

recognized that unsecured creditors have no interest in any particular asset, and, thus, lack even a

colorable interest in the particular property subject to forfeiture.  See United States v. Cambio

Exacto, S.A., 166 F.3d 522, 528-529 (2d Cir. 1999) (person to whom a money transmitter owes

money lacks standing as a general creditor to contest forfeiture of money transmitter's account);

United States v. Carrell, 252 F.3d 1193, 1207 n.15 (11th Cir. 2001) (woman contesting forfeiture

on the ground that the property owner owes her child support payments lacks standing because

she is not an owner); United States v. $20,193.39 U.S. Currency, 16 F.3d 344, 346 (9th Cir.

1994) ("general creditors cannot claim an interest in any particular asset that makes up the

debtor's estate . . . federal courts have consistently held that unsecured creditors do not have

standing to challenge the civil forfeiture of their debtor's property"); United States v. $3,000,

906 F. Supp. 1061 (E.D. Va. 1995) (even though claimant/victim could trace his money to seized

bank account, title was passed to perpetrator, making claimant an unsecured creditor without

standing); United States v. One-Sixth Share, 326 F. 3d 36, 44 (1st Cir. 2003) (person with *in

personam* judgment against property owner has no secured interest in any particular property).

　　　The Article III standing requirement discussed in civil forfeiture cases is identical to that

applicable to the ancillary proceedings that sort out ownership issues in criminal forfeiture cases.

See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of OAS), 73 F.3d 403 (D.C.

Cir. 1996) (bank depositor was only a general creditor of the defendant bank; therefore it was the

defendant's property, not the creditor-claimant's, that was forfeited); United States v. BCCI

Holdings (Luxembourg) S.A. (Petition of Chawla), 46 F.3d 1185, 1191-1192 (D.C. Cir. 1995)

(unsecured creditors do not have an interest in specific property); United States v. Schwimmer,

968 F.2d 1570, 1581 (2d Cir. 1992) (same); United States v. Campos, 859 F.2d 1233, 1239 (6th

Cir. 1988) (same); United States v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997) (person

holding check drawn on defendant's forfeited bank account is a general unsecured creditor with

no interest in specific funds); United States v. BCCI Holdings (Luxembourg) S.A. (Final Order

of Forfeiture and Disbursement), 69 F. Supp. 2d 36 (D.D.C. 1999) (a person who voluntarily

transfers his property to the defendant is no longer the owner of that property; his ability to trace

his property to defendant's assets is irrelevant; therefore, victims who transferred their property

to the defendant are merely unsecured creditors, not owners of the forfeited property); United

States v. Strube, 58 F. Supp. 2d 576 (M.D. Pa. 1999) (family members who obtained a judgment

lien against defendant personally were general creditors and not owners of any interest in a

specific parcel of property).

      Here, McKinney asserts he gave money to his sister and brother-in-law for their loss after

the funds were seized.  The alleged payment did not give him an interest in the specific funds

seized-- it could only make him an unsecured creditor of his relatives.  Further, since McKinney

was aware of the seizure before he allegedly gave money in reimbursement for the seized funds,

he could not become an "innocent owner" of the defendant currency under 18 U.S.C. § 983(d)(3)

to contest the forfeiture.[13]

      **C.**      __Plaintiff Is Entitled To Default Judgment__.

---

[13] CAFRA distinguishes between "pre-existing" innocent owners and "after-acquired" owners.  See 18 U.S.C. §983(d)(2) and (3).  An "after-acquired" owner must prove that he or she is a *bona fide* purchaser for value and "did not know and was reasonably without cause to believe that the property was subject to forfeiture."  Id.  Here, McKinney knew that the defendant currency was seized in a criminal investigation regarding his activities and those of The Brotherhood of Men, Inc.

Because no other party has filed a claim or pleading challenging the forfeiture of the defendant funds and the time for filing a claim has expired, <u>see</u> 18 U.S.C. § 983(a)(4)(A) and Supplemental Rule C(6), the United States is entitled to default judgment pursuant to Fed. R. Civ. P. 55(a).  The entry of Default and a Judgment by Default against the defendant funds is amply supported in the circumstances of this case.  Indeed, the Clerk of the Court "shall enter" the Default where there has been a failure to timely plead or otherwise defend an action within the time fixed by law.  Fed. R. Civ. P. Rule 55(a).

On June 23, 2006, the plaintiff filed a Verified Complaint for Forfeiture *In Rem* against the defendant $21,940.00 in United States currency.  Copies of the Complaint and Warrant of Arrest *In Rem* issued by the Clerk of the Court were served upon the defendant currency on August 16, 2006.  <u>See</u> Document 1 and 3.  Additionally, copies of the Complaint and Warrant of Arrest *In Rem* were sent on June 14, 2007 to all known interested parties, via the United States Postal Service, certified mail, including on July 7, 2006 to McKinney and the Hammonds, but the papers were returned to the United States Attorney's Office as "unclaimed."  <u>See</u> Exhibit E. Notice of the seizure was published in THE WASHINGTON TIMES on August 21, 2006, and in THE DAILY WASHINGTON LAW REPORTER on August 29, 2006.  <u>See</u> Exhibit F.  As a result of the publications, any verified claim should have been filed with the Clerk of the Court by September 28, 2006.

No response, answer, or defense was interposed in accordance with applicable rules.  No other party has filed a claim or pleading challenging the forfeiture of the defendant currency and the time for filing a claim has expired.  <u>See</u> 18 U.S.C. § 983(a)(4)(A); Rules C(6) and G(5), Supplemental Rules for Certain Admiralty and Maritime Claims.

16

Further, whenever a judgement is sought for other than a sum certain (e.g. Judgment of Forfeiture), application for Judgment by Default shall be made to the Court and such Judgment may be entered by the Court so long as the defaulted party is not an infant or otherwise incompetent.  Fed. R.Civ. P. 55(b); <u>DirectTV, Inc. v. Arnold</u>, 392 F. Supp.2d 415 (N.D.N.Y. 2005).  <u>See</u> <u>also</u> <u>Canady , MD v. Erbe Elektromedizin GMBG</u>, 307 F. Supp.2d 2 (D.D.C. 2004); <u>United States v. Gant</u>, 268 F. Supp.2d 29 (D.D.C. 2003).  Thus, the United States is entitled to default judgement in this forfeiture action.

## <u>CONCLUSION</u>

McKinney lacks both "statutory standing" and Article III standing because:  1) he failed to file a verified complaint or statement of interest; and 2) he admitted his relatives owned the defendant currency at the time it was seized and his subsequent reimbursement to them only made him an unsecured creditor.  Because McKinney lacks both "statutory" and Article III standing, the Court should strike McKinney's Answer, and, pursuant to Fed. R. Civ. P. 55(b), enter a default judgement in reference to McKinney's purported interest in the defendant currency.  Further, because no other party has filed a claim or pleading challenging the forfeiture of the defendant currency and the time for filing a claim has expired, the Untied States is entitled to a default judgment pursuant to Fed. R. Civ. P. 55(a).

WHEREFORE, for the forgoing reasons, the United States moves the Court to strike the Answer and to enter a default judgment in its favor.

Respectfully submitted,

_/s/_____
JEFFERY A. TAYLOR, D.C. Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney

_/s/_____
DIANE G. LUCAS, D.C. Bar #443610
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7912

18